485 P.2d 866

**FARMERS INSURANCE EXCHANGE, Appellant,**

v.

**Lysle E. SMITH and Amy Lee Smith, husband and wife, Appellees.**

**No. 2 CA–CIV 913.**

Court of Appeals of Arizona, Division 2.

June 15, 1971.

Rehearing Denied July 14, 1971.
Review Denied Sept. 28, 1971.

Chandler Tullar, Udall & Richmond by D. Burr Udall, Tucson, for appellant.

Russo, Cox & Dickerson, P. C. by Vernon F. Dickerson, Tucson, for appellees.

KRUCKER, Chief Judge.

This appeal challenges the correctness of a declaratory judgment in favor of the appellees as to insurance coverage under a policy issued to them by the appellant. The parties shall hereinafter be referred to as the Smiths and Farmers.

The Smiths were injured in an automobile accident occurring in Pima County, Arizona, on April 21, 1968, when their vehicle collided with one driven by an uninsured motorist. At the time of the accident, the Smiths had an automobile policy issued by Farmers which provided uninsured motorist coverage and described certain vehicles.

At the time they purchased the policy in November, 1966, the Smiths owned two vehicles which were covered under the policy: a 1961 Rambler and a 1959 Volkswagen. On December 23, 1967, they purchased a 1964 Buick Skylark and requested their insurance agent to transfer the insurance coverage from the Volkswagen to the Buick. The uninsured motorist coverage was added at this time. The Volkswagen was kept at the Smiths' home and they maintained title to it. They had always been its registered owners and were

such at the time of the accident in question. The Volkswagen was properly licensed but was not driven after December 23, 1967, until the day of the accident and at no time prior to the date of the accident had the Smiths requested coverage for the Volkswagen.

During the four months that the Volkswagen remained in the Smiths' yard, it developed a flat tire, a dead battery and a broken left-front headlight. On April 21, 1968, Mr. Smith spent two to three hours working on the car, repaired the tire and activated the battery.

After December 23, 1967, the Smiths attempted, but unsuccessfully, to sell the Volkswagen and then decided to sell the Rambler. On April 20, 1968, they orally agreed to sell the Rambler to Miss Nancy Luce. Although the Smiths considered the Rambler "sold" to Miss Luce, the sale in fact was to be effected on Monday, April 22nd. The Smiths did not thereafter drive the Rambler.

On Sunday, April 21, the day of the accident in question, Mr. Smith signed the certificate of title and left it with Mrs. Smith to co-sign and get notarized so that it could be turned over to Miss Luce on Monday when she paid the purchase price. They intended to call their insurance agent on Monday to change the policy coverage on the Rambler to the Volkswagen. Since Mr. Smith intended to use the Volkswagen on Monday to drive to work, he made the above-described repairs and took Mrs. Smith out for a ride in the Volkswagen to try it out. During this ride, the subject accident occurred. Due to the seriousness of their injuries, the Smiths were hospitalized and unable to transact any business for a period of time. Miss Luce acquired the Rambler on April 30, 1968, and the insurance on it was not cancelled until about a month later.

The sole question on appeal is whether the Volkswagen was a "newly acquired automobile" within the purview of the in-

surance policy, which in its pertinent part reads as follows:

"*Newly Acquired Automobile* means an automobile, ownership of which is acquired by the named insured, (a) if it replaces the described automobile and the named insured notifies the Company within thirty days following the date of such acquisition or within the policy term then current, whichever is the longer period of time, or (b) if it is an additional automobile and the Company insures all automobiles owned by the named insured on the date of such acquisition and the named insured notifies the Company within 30 days thereafter; but the insurance with respect to the newly acquired automobile does not apply to any loss against which the named insured has other collectible insurance. The named insured shall pay any additional premium required."

The question presented here is one of first impression in this State, but a number of other jurisdictions have construed a like policy provision in varying factual contexts. With only two exceptions, every court which has considered this provision has held that it is not ambiguous and that in order to be "newly acquired" within its plain meaning, an automobile must have been acquired after the commencement of the policy period and must replace the automobile described in the policy. *See,* Lynam v. Employers Liability Assurance Corp., 218 F.Supp. 383 (D.Del.1963), aff'd 331 F.2d 757 (3d Cir. 1964); Yenowine v. State Farm Mutual Automobile Ins. Co., 342 F.2d 957 (6th Cir. 1965), cert. denied, 382 U.S. 830, 86 S.Ct. 68, 15 L.Ed.2d 74 (1965); Brown v. State Farm Mutual Automobile Ins. Co., 306 S.W.2d 836 (Ky.App. 1957); Country Mutual Ins. Co. v. Murray, 97 Ill.App.2d 61, 239 N.E.2d 498 (1968); Adams v. Bartel, 129 N.W.2d 755 (N.D.

1964); Howe v. Crumley, Jones & Crumley Co., 44 Ohio L.Abs. 115, 57 N.E.2d 415 (Ohio App.1944); State Farm Mutual Automobile Ins. Co. v. Shaffer, 250 N.C. 45, 108 S.E.2d 49 (1959); Utilities Ins. Co. v. Wilson, 207 Okl. 574, 251 P.2d 175 (1952); Coleman v. Atlantic National Ins. Co., 166 So.2d 620 (Fla.App.1964); Marquez v. Dairyland Mutual Ins. Co., 78 N.M. 269, 430 P.2d 766 (1967); Dike v. American Family Mutual Ins. Co., 284 Minn. 412, 170 N.W.2d 563 (1969);[1] Mahaffey v. State Farm Mutual Automobile Ins. Co., 175 So.2d 905 (La.App.1965). *See also,* 12 Couch on Insurance 2d § 45:193.

The only two exceptions to that rule have been National Indemnity Co. v. Giampapa, 65 Wash.2d 627, 399 P.2d 81 (1965) and Boston Ins. Co. v. Smith, 149 So.2d 68 (Fla.App.1963). In the Washington case, a six to three decision, the majority held that the policy provision was ambiguous and should therefore be construed most favorably to protect the insured. The dissenters vigorously protested that the majority's opinion was inconsistent both with the authorities and with the clear meaning of the words of the policy. In the Florida case, a two to one decision, the majority also held that the provision was ambiguous and should be construed in favor of coverage. However, the *Coleman* case, supra, decided by another district of the same Florida court, in a later case unanimously applied the contrary majority rule. Therefore, the State of Washington may be categorized as standing alone.

The Smiths argue, however, that since the Volkswagen was not operable, the majority rule does not apply. The texts do not agree with the Smiths' position. 7 Appleman, Insurance Law and Practice § 4293 at 92; 12 Couch, supra. We ap-

---

1. The Smiths have cited to us a later Minnesota decision, St. Paul Fire and Marine Ins. Co. v. Nyquist, 286 Minn. 157, 175 N.W.2d 494 (1970), in support of their position. This later case, however, is factually different in that the trial court finding that ownership was not acquired before the policy went into effect was sustained on appeal. The *St. Paul Fire and Marine* case has been limited to its facts by Fitch v. Bye, 288 Minn. 344, 180 N.W.2d 869 (1970).

prove the following language in Mahaffey v. State Farm Mutual Automobile Ins. Co., supra:

"An automobile, although in need of a new motor, is still an automobile, as this term is ordinarily understood. Frensley did not acquire an automobile. He only put a new motor in an old automobile he already owned.

Furthermore, we think this construction is consistent with the intention of the contracting parties. The obvious purpose of the provision regarding 'newly acquired automobiles' is to provide automatic coverage, without even the necessity of notice to the insurer, for an automobile acquired by the named insured during the policy period to replace a vehicle covered by the policy. But this provision was not intended to cover another automobile owned by the insured at the time the policy issued and used to replace the described vehicle. To hold otherwise, in a situation like the present, would permit an assured with a number of vehicles, some in operating condition and some in need of repair, to put them in and out of service, contending that all are covered by the policies, when in fact no premiums are being paid for some of them. This may be possible under a fleet policy, but not under the separate policies." 175 So.2d at 909.

The Smiths did not acquire the Volkswagen after making the contract of insurance or during the policy period. We hold, therefore, as do the majority of jurisdictions, that since the Volkswagen was acquired prior to the commencement of the policy period, it did not qualify as a "newly acquired automobile" and there was no insurance coverage at the time of the subject accident. The trial court erred in deciding this coverage question and therefore the judgment is reversed.

HATHAWAY and HOWARD, JJ., concur.